IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

SYLVIA M.,[1]
    Plaintiff,

v.                                                  Civil No. 3:19cv428 (DJN)

ANDREW M. SAUL,
Commissioner of Social Security,
    Defendant.

**MEMORANDUM OPINION**

On June 19, 2015, Sylvia M. ("Plaintiff") applied for Social Security Disability Insurance Benefits ("DIB") under the Social Security Act ("Act"), alleging disability from systemic lupus erythematous, pleural effusion, arthritis of the hip, kidney nephritis, Raynaud's phenomenon, depression, hypertension, fibromyalgia, anemia and migraines, with an alleged onset date of June 10, 2015. The Social Security Administration ("SSA") denied Plaintiff's claim initially on October 8, 2015, and again upon reconsideration on February 3, 2016. Thereafter, an Administrative Law Judge ("ALJ") denied Plaintiff's claim in a written decision and the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision as the final decision of the Commissioner.

Plaintiff now seeks judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g), arguing that the ALJ erred by failing to establish that Plaintiff could perform work existing in significant numbers in the national economy. (Br. Supp. Pl.'s Mot. Summ. J. ("Pl.'s Br.") (ECF

---

[1]    The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

No. 19-1) at 5.) This matter now comes before the Court on the parties' cross-motions for summary judgement, rendering the matter ripe for review.[2] For the reasons set forth below, the Court DENIES Plaintiff's Motion for Summary Judgment (ECF. No. 19), GRANTS Defendant's Motion for Summary Judgment (ECF No. 20) and AFFIRMS the final decision of the Commissioner.

## I. PROCEDURAL HISTORY

On June 19, 2015, Plaintiff filed an application for DIB with an alleged onset date of June 10, 2015. (R. at 94-103.) The SSA denied this claim initially on October 8, 2015, and again upon reconsideration on February 3, 2016. (R. at 102, 113-14.) At Plaintiff's written request, the ALJ held a hearing on August 24, 2017. (R. at 129-33, 152-57.) And the ALJ held a second hearing on April 13, 2018. (R. at 187-92.) On June 11, 2018, the ALJ issued a written opinion, denying Plaintiff's claim and concluding that Plaintiff did not qualify as disabled under the Act, because, given Plaintiff's age, education, work experience and residual functional capacity ("RFC"), Plaintiff could perform jobs existing in significant numbers in the national economy. (R. at 26.) On April 4, 2019, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision as the final decision of the Commissioner subject to review by this Court. (R. at 1-3.)

## II. STANDARD OF REVIEW

In reviewing the Commissioners' decision to deny benefits, a court "will affirm the Social Security Administration's disability determination 'when an ALJ has applied correct legal

---

[2] The administrative record in this case remains filed under seal, pursuant to E.D. Va. Loc. R. 5 and 7(C). In accordance with these Rules, the Court will endeavor to exclude any personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth) and any financial account numbers from its consideration of Plaintiff's arguments and will further restrict its discussion on Plaintiff's medical information to only the extent necessary to properly analyze the case.

standards and the ALJ's factual findings are supported by substantial evidence.'" *Mascio v. Colvin*, 780 F.3d 632, 634 (4th Cir. 2015) (quoting *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 340 (4th Cir. 2012)). Substantial evidence requires more than a scintilla but less than a preponderance, and includes the kind of relevant evidence that a reasonable mind could accept as adequate to support a conclusion. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Indeed, "the substantial evidence standard 'presupposes . . . a zone of choice within which the decisionmakers can go either way, without interference by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision.'" *Dunn v. Colvin*, 607 F. App'x 264, 274 (4th Cir. 2015) (quoting *Clarke v. Bowen*, 843 F.2d 271, 272-73 (8th Cir. 1988)). To determine whether substantial evidence exists, the court must examine the record as a whole, but may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgement for that of the [ALJ]." *Hancock*, 667 F.3d at 472 (quoting *Johnson v. Barnhard*, 434 F.3d 650, 653 (4th Cir. 2005)). In considering the decision of the Commissioner based on the record as a whole, the court must "tak[e] into account . . . 'whatever in the record fairly detracts from its weight.'" *Breeden v. Weinberger*, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951)). The Commissioner's findings as to any fact, if substantial evidence in the record supports the findings, bind the reviewing court to affirm regardless of whether the court disagrees with such findings. *Hancock*, 667 F.3d at 472. If substantial evidence in the record does not support the ALJ's determination or if the ALJ has made an error of law, the court must reverse the decision. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987) ("A factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law.")

SSA regulations set forth a five-step process that the agency employs to determine whether disability exists. 20 C.F.R. § 404.1520(a)(4); *see Mascio*, 780 F.3d at 634-35 (describing the ALJ's five-step sequential evaluation). To summarize, at step one, the ALJ looks at the claimant's current work activity. § 404.1520(a)(4)(i). At step two, the ALJ asks whether the claimant's medical impairments meet the regulations' severity and duration requirements. § 404.1520(a)(4)(ii). Step three requires the ALJ to determine whether the medical impairments meet or equal an impairment listed in the regulations. § 404.1520(a)(4)(iii). Between steps three and four, the ALJ must assess the claimant's RFC, accounting for the most that the claimant can do despite her physical and mental limitations. § 404.1545(e). At step four, the ALJ assesses whether the claimant can perform her past work given her RFC. § 404.1520(a)(4)(iv). Finally, at step five, the ALJ determines whether the claimant can perform any work existing in the national economy. § 404.1520(a)(4)(v).

### III. THE ALJ'S DECISION

On August 24, 2017, the ALJ held a hearing during which Plaintiff (represented by counsel) and a VE testified. (R. at 39-79.) On June 11, 2018, the ALJ issued a written opinion, finding that Plaintiff did not qualify as disabled under the Act. (R. at 13-27.)

The ALJ followed the five-step evaluation process established by the Act in analyzing Plaintiff's disability claim. (R. at 15-27.) At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of June 10, 2015. (R. at 15.) At step two, the ALJ determined that Plaintiff had the following severe impairments: systemic lupus erythematosus, mixed connective tissue disease, fibromyalgia, degenerative disc disease of the cervical spine, bilateral trochanteric bursitis, migraine headaches and obesity. (R. at 15.) At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of

4

impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 19.)

In assessing Plaintiff's RFC, the ALJ found that Plaintiff could perform sedentary work as defined in 20 C.F.R. § 404.1567(a) with additional limitations. (R. at 20.) Specifically, Plaintiff could lift and carry less than ten pounds frequently and up to ten pounds occasionally.[3] (R. at 20.) The ALJ also found that Plaintiff needed to switch positions from sitting to standing every thirty minutes while remaining in place and productive. (R. at 20.) The ALJ limited Plaintiff to occasionally pushing and pulling with the right upper extremity the same as she could lift and carry. (R. at 20.) Plaintiff could only occasionally climb ramps and stairs and stoop, but could frequently balance. (R. at 20.) The ALJ concluded that Plaintiff could not kneel, crouch, crawl or climb ladders, ropes or scaffolds. (R. at 20.) And Plaintiff could occasionally finger and reach in all directions with the right upper extremity. (R. at 20.) Finally, due to pain or fatigue, the ALJ opined that Plaintiff would be off task for ten percent of the day. (R. at 20.)

At step four, the ALJ found that Plaintiff could not perform any of her past relevant work. (R. at 25-26.) However, at step five, the ALJ found that Plaintiff's age, education, work experience and RFC allowed her to perform jobs existing in significant numbers in the national economy, including the representative occupation of surveillance-system monitor. (R. at 26-27.) Therefore, the ALJ concluded that Plaintiff did not qualify as disabled under the Act. (R. at 27.)

---

[3] The ALJ stated this limitation when questioning the VE. (R. at 72.) The ALJ did not list the exact weight limitation in her written opinion, but referenced the limitation in describing Plaintiff's push/pull weight limitations. (R. at 20.) Accordingly, the Court includes the specific weight limitations in the RFC.

## IV. ANALYSIS

Plaintiff, forty-six years old at the time of this Memorandum Opinion, previously worked as a cashier/stocker and as a decorator of bakery products. (R. at 26.) She applied for DIB, alleging disability from systemic lupus erythematous, pleural effusion, arthritis of the hip, kidney nephritis, Raynaud's phenomena, depression, hypertension, fibromyalgia, anemia and migraines, with an alleged onset date of June 10, 2015. (R. at 94.) Plaintiff appeals to this Court, contending that the ALJ failed to establish that she could perform work existing in significant numbers in the national economy, because: (1) the VE did not provide regional job statistics for the identified job of surveillance-system monitor; and, (2) the ALJ failed to obtain information about the source of VE's jobs data. (Pl.'s Br. at 5-6.) For the reasons set forth below, the ALJ did not err in her decision.

### A. The ALJ Did Not Err by Finding That a Significant Number of Jobs Existed in the National Economy that Plaintiff Could Perform.

Plaintiff primarily argues that the ALJ failed to meet her step five burden to establish that Plaintiff could perform work existing in significant numbers in the national economy. (Pl.'s Br. at 5-6.) Indeed, at step five of the analysis, the ALJ must determine whether, considering a claimant's age, education, work experience and RFC, the claimant can perform work existing in significant numbers in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). If the claimant can make an adjustment to any other work, she does not qualify as disabled. § 404.1520(a)(4)(v). Notably, at step five, the burden shifts to the Commissioner to show that the claimant can perform other work. § 404.1560(c)(2); *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). The ALJ may carry her burden at step five using the testimony of a VE, including in determining whether the jobs identified by the VE exist in significant numbers in the national economy.

§ 404.1566(e); *see also Smith v. Califano*, 592 F.2d 1235, 1236 (4th Cir. 1979) ("Ordinarily, the testimony of a vocational expert is required in order to support a finding that alternate jobs which the claimant can do exist in the nation's economy.").

To that end, the Act defines "work which exists in the national economy" as "work which exists in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). The corresponding regulations reiterate that "work exists in the national economy when it exists in significant numbers either in the region where you live or in several other regions of the country." 20 C.F.R. § 404.1566(a); *see also* SSR 83-12, 1983 WL 31253 at *5 (Jan. 1, 1983) ("Whenever vocational resources are used, and an individual is found to be not disabled, the determination or decision will include (1) citations of examples of occupations/jobs the person can do functionally and vocationally and (2) a statement of the incidence of such work in the region in which the individual resides or in several regions of the country."). Neither the statute nor the regulations require that a given job exist in the immediate area in which the claimant lives, that a specific job vacancy exists for her or that she would be hired if she applied. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1566(a)(1)-(3). That said, work does not exist in significant numbers if it involves "[i]solated jobs that exist only in very limited numbers in relatively few locations outside of the region where [the claimant] live[s]." 20 C.F.R. § 404.1566(b).

Based on these principles, Plaintiff contends that, because the VE provided no testimony regarding regional statistics for the job that she identified, the ALJ failed to establish that the identified job exists in significant numbers in the national economy. (Pl.'s Br. at 7-8.) Specifically, the VE identified one job that Plaintiff could perform — surveillance-system monitor — and stated that approximately 81,000 positions existed nationally. (R. at 73.)

Plaintiff claims that without specific testimony as to job figures in Plaintiff's region or other regions of the country, the ALJ has not "prove[n], by a preponderance of the evidence, that the claimant is capable of doing other work that exists in significant supply in the national economy." *Thomas v. Berryhill*, 916 F.3d 307, 313 (4th Cir. 2019).

Defendant responds the ALJ satisfied her burden, because the nation as a whole comprises several regions and, therefore, the identification of job figures in the national economy equates to identifying jobs "in several other regions of the country." (Def.'s Mot. Summ. J. & Br. Supp. Thereof ("Def.'s Br.") (ECF No. 20) at 11.) Further, Defendant notes that § 404.1566(a)(1) explicitly states that work exists in the national economy "regardless of whether such work exists in the immediate area in which [the claimant] lives." (Def.'s Br. at 10.)

The Fourth Circuit has yet to squarely address whether an ALJ carries his or her burden at step five when a VE fails to testify as to the number of positions available in a particular region or regions of the country, as opposed to only nationally. However, other courts addressing this issue or similar issues have found that testimony regarding the availability of jobs nationally satisfies the requirements of the Act and its enacting regulations.

For example, the Ninth Circuit has held that VE testimony of 25,000 jobs nationwide represented a "significant number of jobs in several regions of the country." *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 529 (9th Cir. 2014). The court reasoned that 25,000 jobs did not fall into the category of "isolated jobs" described in § 404.1566(b). *Id.* at 529. Accordingly, the court found national job figures satisfied the ALJ's finding in accordance with §§ 423(d)(2)(A) and 1382c(a)(3)(B). *Id.*

8

Likewise, the Tenth Circuit has found no error when an ALJ relies on testimony as to the number of jobs nationally to satisfy § 423(d)(2)(A). *Vititoe v. Colvin*, 549 F. App'x 723, 731 (10th Cir. 2013) ("[S]tating that there are a number of jobs available in the national economy is, by definition, stating the incidence of jobs 'in the region in which the individual resides or in several regions of the country.'" (quoting § 423(d)(2)(A))). Several district courts outside the Fourth Circuit have also reached the same conclusion. *See, e.g., Hayden v. Saul*, 2020 WL 888002, at *12 (E.D. Mo. Feb. 24, 2020) (finding that a total of 200,000 jobs in the national economy "supports the conclusion that there is work existing in 'several regions of the country' that Plaintiff can perform. Although it would certainly be a better practice for the Commissioner to obtain specific evidence regarding the regional availability of jobs, the evidence obtained in this case was sufficient to satisfy the Commissioner's burden" (quoting § 423(d)(2)(A))); *Hill v. Saul*, 2019 WL 3947774, at *5-6 (E.D. Mo. Aug. 21, 2019) ("[N]o precedential authorities indicat[e] that the ALJ may not rely on national numbers alone to meet the Commissioner's burden of showing jobs that exist in 'significant numbers in the national economy.'" (quoting § 423(d)(2)(A))); *Brininger v. Berryhill*, 2017 WL 3634187, at *15 (M.D. Pa. Aug. 7, 2017), *report and recommendation adopted*, 2017 WL 3632496 (M.D. Pa. Aug. 23, 2017) ("[S]tating that there are a number of jobs available in the national economy is, by definition, stating the incidence of jobs in the region in which the individual resides or in several regions of the country." (internal quotations and citations omitted)); *Nelson v. Colvin*, 2014 WL 372496, at *3-4 (W.D. Wash. Feb. 3, 2014) ("[W]here the VE provided national and regional statistics, if either a significant number of jobs exist in the region where the claimant resides or in the nation as a whole, then the ALJ's decision should be upheld."); *Vining v. Astrue*, 720 F. Supp. 2d 126, 138 (D. Me. 2010) ("[C]ourts have overlooked an absence of testimony that jobs do exist in

9

several regions of the country when a reasonable mind could conclude that they do."); *see also Brun v. Barnhart*, 2004 WL 413305 at *6 (D. Me. Mar. 3, 2004), *report and recommendation adopted*, 2004 WL 1572695 (D. Me. Apr. 5, 2004), *aff'd*, 126 F. App'x 495 (1st Cir. 2005) ("There is nothing in the nature of the job at issue, surveillance monitor, that suggests that these jobs exist in only a few locations.").

Within the Fourth Circuit, at least one district court has squarely rejected a similar argument to the one Plaintiff makes here:

> Although VEs typically testify to both the national and regional number of jobs available for a particular occupation, the regulatory language simply requires a showing that work exists in significant numbers "*either* in the region where [a claimant lives] *or* in several other regions of the country." 20 C.F.R. §§ 404.1566(a), 416.966(a). I am not persuaded that testimony that a significant number of jobs available nationally for each occupation is meaningfully distinguishable from a significant number of jobs available in several other regions of the country.

*Lawson v. Comm'r, Soc. Sec. Admin.*, 2015 WL 660827 at *2 (D. Md. Feb. 13, 2015) (emphasis supplied). And other district courts in the Fourth Circuit have affirmed an ALJ's reliance on national job figures to satisfy his burden at step five. *See, e.g., McDowell v. Berryhill*, 2018 WL 4523196, at *18 (D.S.C. Apr. 16, 2018) (concluding that "§ 404.1566(a) allows [an] ALJ to find that jobs exist in significant numbers based on either regional or national numbers"); *Critchley v. Colvin*, 2016 WL 3030211, at *8 (S.D. W. Va. May 4, 2016) ("The issue is whether representative jobs exist in significant numbers in either the local economy or the national economy." (alteration removed) (internal quotations and citations omitted)); *Harris v. Astrue*, 2011 WL 2463757, at *1 (M.D.N.C. June 21, 2011) ("[T]he number of jobs in existence nationally, per the VE's testimony . . . , does not suggest that those jobs are isolated or limited to only a few locations.").

To be sure, other courts have found that national job figures alone do not show that jobs exist in several regions of the country and have remanded for further development of the record. *See, e.g., Webb v. Berryhill*, 294 F. Supp. 3d 824, 904 (D.S.D. 2018) (remanding for several reasons including the reliance on VE testimony that identified only national job figures). In *Webb*, the court emphasized that "'work which exists in the national economy' is a term of art in Social Security law that does not mean work in the entire United States. Instead, it means 'work which exists in significant numbers either in the region where such individual lives or in several regions of the country.'" *Id.* at 903 (quoting § 423(d)(2)(A)). The court found that VE testimony of national job figures, alone, proved insufficient, as both the statutory and regulatory language "require more specificity than that." *Id.* at 904. And the court added:

> While this court might hazard a guess that there are substantial numbers of housekeeping cleaning jobs available in South Dakota, or in the region consisting of South Dakota, North Dakota, Wyoming and Montana, or in several other regions in the country, this court is not allowed to guess about facts that might have been able to have been adduced at the agency level. The failure of proof requires remand to the agency to further develop the facts at step five.

*Id.* at 904.

After considering these holdings and others, the Court agrees with the Tenth Circuit's reasoning that "stating that there are a number of jobs available in the national economy is, by definition, stating the incidence of jobs 'in the region in which the individual resides or in several regions of the country.'" *Vititoe*, 549 F. App'x at 731 (quoting § 423(d)(2)(A)). Of course, the most prudent practice would be for ALJs to solicit testimony as to the number of jobs in a claimant's region as well as nationwide, but neither the figures to which the VE testified nor the

11

general requirements of the job of surveillance-system monitor "suggests that these jobs exist in only a few locations."[4] *Brun*, 2004 WL 413305 at *6.

Indeed, a reasonable mind could accept 81,000 jobs nationally as adequate to support a conclusion that such jobs exist in several regions of the country. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). Accordingly, the ALJ did not err in relying on the VE's testimony to establish that Plaintiff could perform work existing in significant numbers in the national economy.

### B. The ALJ Did Not Err in Failing to Inquire as to the Source of the VE's Jobs Data.

Plaintiff also argues that the ALJ erred in failing to obtain information about the source that the VE used to provide her jobs data. (Pl.'s Br. at 6.) Plaintiff argues that without the source for VE's testimony the record proves, at best, incomplete, if not completely unreliable. (Pl.'s Br. at 9.) However, Plaintiff acknowledges that no precedent from the Fourth Circuit supports this claim. (Pl.'s Br. at 9 n.3.) Defendant responds that Plaintiff waived this objection by failing to raise it during the administrative hearing. (Def.'s Br. At 13.) Further, Defendant notes that Plaintiff did not raise any evidence impeaching the VE's actual testimony. (Def.'s Br. at 14.) The Court agrees with Defendant.

---

[4] Notably, the Court has previously found that the surveillance-system monitor position exists in significant numbers in the national economy. *See, e.g., Crumbley v. Colvin*, 2016 WL 3660419 at *6 (E.D. Va. June 7, 2016), *reported and recommendation adopted*, 2016 WL 3670805 (E.D. Va. July 5, 2016) (finding 36,000 surveillance-system monitor jobs nationally that plaintiff could perform satisfied the ALJ's step five burden); *Hoag v. Colvin*, 2014 WL 5092749 at *14 (E.D. Va. Sept. 30, 2014) (identifying 80,000 surveillance-system monitor positions exist nationally and 2,000 such positions exist in Virginia that plaintiff could perform); *Marrow v. Colvin*, 2014 WL 4467271 at *17 (E.D. Va. Sept. 10, 2014) (finding that 4,000 surveillance-system monitor jobs nationally and 200 jobs in Virginia that plaintiff could perform proved significant). Although not dispositive, these findings support the Court's reasoning that the VE's testimony here satisfied the ALJ's burden at step five.

Indeed, "a vocational expert's testimony may count as substantial evidence even when unaccompanied by supporting data." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1155 (2019). Plaintiff fails to present any caselaw or regulation that requires the VE to proactively identify the sources of her job figures or the ALJ to inquire into those sources. And Plaintiff's representative during the ALJ hearing failed to challenge the VE's jobs data or credentials such that the ALJ had reason to question them. Considering the VE's forty years of professional experience, the ALJ could reasonably rely on the VE's testimony to carry her burden at step five. Accordingly, the ALJ did not err.[5]

## V.   CONCLUSION

For the reasons set forth above, the Court DENIES Plaintiff's Motion for Summary Judgment (ECF No. 19), GRANTS Defendant's Motion for Summary Judgment (ECF No. 20) and AFFIRMS the final decision of the Commissioner. An appropriate order shall issue.

Let the Clerk file a copy of his Memorandum Opinion electronically and notify all counsel of record.

/s/
David J. Novak
United States District Judge

Richmond, Virginia
Dated: August 26, 2020

---

[5] As mentioned, Defendant also argues that Plaintiff has waived her right to challenge the ALJ's failure to inquire into the data supporting the VE's testimony, because she failed to raise such a challenge at the administrative level. Because the Court finds that the ALJ did not err by failing to inquire into the source of the VE's jobs data, the Court need not address this argument. Nonetheless, as the Court noted in *Bennett v. Saul*, "'a plaintiff must raise [objections to a VE's testimony] during the [ALJ] hearing or risk waiving [them].'" 2019 WL 3729015, at *6 (E.D. Va. July 22, 2019) (quoting *Revere v. Berryhill*, 2019 WL 99303, at *3 (E.D. Va. Jan. 3, 2019) (internal citations omitted)). Because Plaintiff, represented by counsel, did not challenge the VE's data sources during her hearing before the ALJ, Plaintiff has waived her right to raise that challenge here. Accordingly, even if the ALJ did err, the Court must affirm.